Ernest Galvan, Plaintiff's Appellant Interest in Parole Eligibility. My clients are California prisoners who were sentenced to life terms for nonviolent third stripes. In order to make your case, do you have to show that the protected liberty interest in parole, that the language that was used creates a presumption that your client would be granted parole? No, Judge Eaton. Under this court's holding in Miller v. Oregon, the issue is does the language create a presumption that my clients would be eligible for parole? Okay. Regardless of whether they'll ever be released, but the right at issue is eligibility. And what language do you point to to demonstrate that? The language we point to is the language that Proposition 57 added to the California Constitution at Article 1, Section 32, which said that any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense. Okay. And a person who was sentenced under the three-strike provision, how would they establish this? Before Prop 57, before this language was added, their parole eligibility would have been at the expiration of the number of years part of their life sentence, 25 to life, typical three-strike sentence. What changed with Proposition 57 and with this language I just read was that once they complete the term for their primary offense, then at that point they are eligible for parole. And the constitutional amendment defines that in the next provision where it says the full term for the primary offense means the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement consecutive sentence or alternative sentence. And when the proposition was passed, it was well established in California law that the third-strike sentence was an alternative sentence. And when the voters act as a legislature, it is presumed that the voters know the state of existing law. And therefore, it's perfectly clear that the intent of this provision and the plain text of this provision is that that early eligibility right attaches at the time of the expiration of the sentence that they would have gotten had it not been a third-strike sentence. So, for example, for Mr. Escarzaga, it's about nine years after his sentence. Or as we included in our complaint, the allegation that on average it tends to be around seven years as opposed to the 25 years that would have governed earlier for Prop 57. So it's a very significant liberty interest in having one's parole consideration process start around a decade or less versus two and a half decades. So a very significant interest. So you're making an argument as to why Edwards was correctly decided. Because Edwards, that's how we interpret Prop 57. The concern I have or the problem I have with this is that the opposing counsel gives an explanation of why the CDCR, the DOC, came out a different way, had a different interpretation. And based on the qualified immunity standard, the argument goes that the DOC officials would have to have clearly established that that interpretation was wrong or that they were knowingly violating the law. I think one of the standards is we're plainly incompetent or knowingly violating the law. And so what is it that clearly establishes that the CDCR's interpretation, as they were required to do by the Constitutional Amendment itself, that they were authorized to interpret it, was knowingly violating the law? If I may, Judge Okuda, the argument that we have to show that they knowingly violated the law is at odds with the Supreme Court's qualified immunity jurisprudence. Well, that's a quote from what they say. Officials are entitled to qualified immunity unless they are plainly incompetent or knowingly violating the law. That's from Mallory. And that has been repeated by the Supreme Court countless times. But in Harlow v. Fitzgerald, Your Honor, the court had the opportunity to include a subjective element in qualified immunity. And it analyzed at length whether qualified immunity should require subjective inquiry into what the officer's thought process or intent was. And Harlow said, no, it's an objective standard. It's not what did these officers think. It's what would a reasonable officer know was the clearly established law. And so if my choice is between knowingly and plainly incompetent, if those are the only two choices, I will go with plainly incompetent. So was it clearly established? I mean, it could hardly be clearly established because no California court had ruled on that issue at the time. And there isn't any Supreme Court case, I believe, that has interpreted Prop 57. So how is it clearly established? It's clearly established in the plain text of the constitutional provision. I think that it's significant that three courts of appeals in McGee, Edwards, Gadlin, actually four if we count the Alliance case, and now the California Supreme Court in the Gadlin case have examined the reasonableness of this contention that the CDCR could interpret the words to exclude groups of offenders like my clients. None of those judges, and I think now if it's three on each intermediate appellate panel and nine on the Supreme Court, we're up to something like two dozen judges. There's no dissent. There's no concurrence. All of them agree that it's unreasonable that the CDCR exceeded its regulatory authority. It had no regulatory authority. But is unreasonableness enough? So all you have to do is establish that their interpretation of the Proposition 57 was unreasonable in order to make your case? We have to establish that it violated clearly established law to defeat qualified immunity for the damages part of our case. For the injunctive part of our case, and our case has an injunctive part, we do not have to establish that it violated clearly established law. We just have to establish that it violated the law. Could I just go into the injunctive relief question? I was a little confused about that as well. I just want to be sure I understand that you're asking for a scheduled parole hearing, which is not part of the law. You're not asking for injunctive relief to establish their eligibility for parole. You're asking for some scheduling matters. Am I correct? And what is the basis for injunctive relief for scheduling? Your Honor, I think those two things are related. The right to eligibility is meaningless if one never has an opportunity to come before the board. Well, it's not a never, right? It's that your clients say the CDCR is taking too long. But that's not based in any schedule that's in the constitutional amendment itself. Is that right? The amendment does say that they shall be eligible earlier than they otherwise would have been. Right, but the eligibility and when you schedule the parole hearing I guess is more of an administrative issue, if I'm understanding it correctly. That is right, Your Honor. And the injunctive relief is shaped to provide some sort of remedy for these people who should have had their eligibility start now four years ago in 2017. And so the injunctive relief is to provide some sort of restoration of that right to them. Counsel, before you run out of time, can you address the legislative immunity question? Because the statute specifically delegates authority to the Department of Corrections to promulgate regulations to effectuate the language of the constitutional provision. And that's what the Department of Corrections did. They may have gotten it wrong. They may have violated state law in doing so. But that doesn't defeat legislative immunity, does it? Legislative immunity does not apply, Your Honor, to the implementation of an across-the-board policy, whether it's written in a regulation or not. And I would direct the Court's attention to the Supreme Court of Virginia versus Consumers Union case that's cited in our Rule 28J letter from this weekend. And there we had officials, the Supreme Court found they were acting in a legislative sense when they drafted certain rules regarding the conduct of attorneys. But the Court said that they could still be liable under Section 1983 for implementing those rules. So I take it. Let me just clarify your response. You're saying that the promulgation of the regulations would be entitled to legislative immunity. But then you're saying, okay, well, my claim is really based on the implementation portion and not the promulgation of the regulations themselves. And that's how you defeat legislative immunity in this case? Your Honor, it's both. In this case, the promulgation of the regulations is not subject to legislative immunity. And we briefed that by establishing under the Kagumaru factors that none of those factors apply and that these regulations were simply an interpretive act. And that's actually clear in the State's Rule 28J letter from this weekend where they cite the Fabo case. And the Fabo case says, under California state law, when officials, in fact, these very same officials and these very same regulations, their act of writing them could be mixed. It could be quasi-legislative. It could also be interpretive. And the Fabo court said in this case, these officials, this regulation, it was interpretive. It was not a legislative act. And so neither applies. Legislative immunity does not apply. And even if it did apply, it wouldn't matter because our complaint also seeks relief for the acts they undertook to enforce the rules, not just to write them. Do you want to save the remainder of your time? Yes, Your Honor. Thank you. All right. We'll hear from the other side. Thank you, Your Honor. Good morning. May it please the Court, Deputy Attorney General Cassandra Shryock, on behalf of Appellees Diaz and Kernan. This court should affirm the decision below for two reasons. First, it was not clearly established that prison officials, in the unique circumstances that they faced, violated appellants' federal constitutional rights, and thus officials are entitled to qualified immunity. And second, officials are also entitled to legislative immunity. With respect to qualified immunity, officials are entitled to immunity unless it was clearly established that their conduct violated appellants' federal constitutional rights in this case. Why isn't it clearly established in this particular case? The provision basically says that the primary term can't include enhancements, consecutive sentences, and alternative sentences. So if the Department of Corrections had issued a regulation that says, oh, okay, we're going to actually include consecutive sentences towards the primary term, so you're not going to be eligible for parole unless you fully serve the sentence, including consecutive sentences. Would there be a problem? Not for qualified immunity purposes, Your Honor. That may be inconsistent with that regulation that you suggest would be inconsistent with state law. But there is no clearly established federal right to have a state statute governing parole interpreted in a way that includes specific individuals for early parole consideration. And it's appellants' burden in this case to demonstrate and point to a controlling authority that clearly established that right, or a robust consensus of persuasive authority. And here appellants are pointed to- Isn't it clearly established that if there is a right to be eligible for parole under state law, that you can have a federal due process claim? So two points to that, Your Honor. First, I believe appellants misconstrued the discourse decision in Miller v. Oregon there. But even if there is a liberty interest implicated by Section 32 of the California Constitution, the right that attaches is the right to certain procedural protections at that parole consideration. Hearing- Well, it depends on how you frame it. I see this right as not a right to procedural protections at the parole hearing, but the right to have a parole hearing if you're eligible for parole. So if you define it that way, then wouldn't under Green, Holtz, and McQuillan establish that right? No, Your Honor, because here the issue of who was eligible is entirely an issue of state law. And it was unclear until the California Court of Appeals decision in Inouye Edwards in 2018 that the CDCR's regulations were inconsistent with Section 32 of the California Constitution. For qualified- Yeah, that's why I asked the question on consecutive sentences. If the constitutional provision is clear that consecutive sentences should not be counted towards the primary term and the regulations violate that, you don't need cases to clarify that because that's a direct violation of the constitutional provision itself. Right? The state constitutional provision, Your Honor. Right, right. So isn't it clear in California that the three-strike sentence is an alternative sentence? That seems beyond debate, beyond dispute, right? Perhaps, Your Honor, but at the time we're looking at for qualified immunity purposes, which is 2017 and 2018, before the Inouye Edwards decision came out, California jurists pointed to the fact that the language of Section 32 was unclear. Justice Chin, in his dissent in Brown v. Superior Court, noted that both nonviolent felony offense as well as full term of the primary offense were problematic terms, as he stated. And so if California jurists could not readily ascertain the meaning of these terms in this newly enacted constitutional provision, it could not be clearly established that the CDCR's interpretation of Section 32 was incorrect. It is only in light of the decision in Inouye Edwards where that was established and as appellants pled below, once Inouye Edwards was decided, the regulations were amended and appellants were given the one thing that Section 32 entitled them to, eligibility for parole consideration. And they have not pointed to any federal authority that would establish they had a federal constitutional right to that eligibility. The only cases they point to speak to what procedural protections they are entitled to at the parole consideration hearing, and that was the issue in both Greenhalt and in Miller. And those cases, in both of those cases, it was not disputed that the inmates were eligible to be considered for parole or early parole in the case of Miller. So the court got to skip over that portion of the analysis and go directly to the one issue that was before the court in both of those cases, what procedural protections were due to those individuals. So because there was nothing to speak to how a state agency must interpret state law about who is eligible for parole, prison officials were entitled to qualified immunity. It sort of raises a metaphysical question as to whether a federal court can know what the state law is before the state court has ruled. And I'm wondering if there are any cases on that point. I think Judge Wynn's point is, well, if we can clearly read what the state constitutional law amendment says, isn't that what's promised by state law and the ruling of the regulations of the CDCR violate that? And your point, if I understand it, is that, well, we don't know what state law is until the state court has ruled. So is there any case law that will explain which approach is correct? I believe it's cited in our brief. Your Honor, Lewis v. Jeffers speaks to federal courts not looking over the shoulder of the state courts and their interpretations. And in that case, it would state sentencing law. But the Supreme Court held in Greenhalgh that there is no constitutionally protected right to parole release. That is entirely a state-created liberty interest. And a liberty interest is not in and of itself a right. A liberty interest triggers a right, which is certain procedural protections at the parole consideration hearing itself. Can you address the legislative immunity question? I had a question in that there doesn't seem, in our circumstances, there doesn't seem to be a case on point where a state agency, executive branch agency's promulgation of regulations was deemed to have legislative, to be legislative in nature. Can you address that? I am not, I similarly am not aware of any authority, Your Honor. But again, that goes to the unique circumstances that officials face in this case. This is the only state constitutional provision that appellees are aware of that grants a right, but then delegates rulemaking authority and the parameters of that right to a state agency to adopt regulations in furtherance up. And the California Supreme Court's decision in Ray Gadlin at the end of last year found that the constitutional, state constitutional provision at issue here, quote, may include some discretion to define what constitutes a nonviolent felony offense. And the Court of Appeals decision, the California Court of Appeals decision in Ray Febo noted that voters delegated their lawmaking authority to the Department of Corrections in this case to promulgate regulations. And then that delegation was quasi legislative in nature. So here there is a unique circumstance where that lawmaking authority has been delegated, which would not necessarily exist in other circumstances or with respect to other regulations. So in these, in these unique circumstances, legislative immunity would attach because that lawmaking authority was delegated to the department. But how about injunctive relief? Is there something different here? Yes, Your Honor. I first I believe it was unclear whether the injunctive relief claim was raised in the in the opening brief. We addressed it in our answering brief and an abundance of caution. And I do not believe there was any response in the reply brief. So arguably any claim is to the dismissal of the injunctive relief claim has now been waived. But as to looking at what appellants are asking for, it is a specific timetable to have their parole consideration hearing. But all aspects of parole, other than those procedural protections that are required by greenholds, are determined by state law. And here the California Constitution does not include any statement of when a parole consideration hearing must be conducted from the point that an individual becomes eligible or from the point that Proposition Section 32 went into effect. So there is simply no federal or state law basis for the injunctive relief that appellants seek. And in fact, all the district courts that have considered this issue have found that there that there is no federal right implicated and that their Proposition 57 Section Section 32 of the California Constitution does not create a liberty interest. And those cases are cited on page 26 of our of our answering brief. So there is no consensus of the federal courts that there is even a federal right at issue here. And so if we and that is today. So if we go back to 2017 and 2018, which is the time that this court must look at when making a qualified immunity determination, it cannot be said that there was this robust consensus of persuasive authority that would have informed prison officials that their interpretation of this newly enacted constitutional provision violated appellants federal right to due process. So unless the court has any further questions, we respectfully request that the court affirm the decision below. Thank you for your argument and opposing counsel. You have some time. Thank you, Your Honor. The state's argument really does point to the fundamental error in the district court's opinion, which is it's on page nine of the opinion that page 13 of the exception record. And it has to do with the holding in Miller. There are two independent holdings in Miller. You heard from the state's attorney where one of them is, which is whether Mr. Miller got the actual process that was due. But there's a earlier holding in Miller. In fact, Miller opinion is very carefully structured with headings. And the first heading in the Miller opinion is Miller's liberty interest in early eligibility for parole hearing because the state of Oregon put that at issue. The state of Oregon made the argument. Same arguments being made here that there is no such due process right under green holes. And the Ninth Circuit analyzed that and held. We therefore conclude that there is there is a right to the early parole consideration. That's the end of Section A. And then Section B is Miller's due process rights. Now, the error in the district court's opinion on page nine, when Miller is discussed, is to address only that second holding. And say all that Miller establishes is that you may have a right to some kind of process. But the holding at issue here that the district court missed, that the state is missing, is that you have a right to early eligibility when the state law so provides. So Miller does clearly establish the right at issue here, which is early eligibility on legislative immunity. There is a reason that all of the cases are about municipal officials, officials, because that's how municipal government tends to be structured. The mayor tends to be a member of the city council. All the functions are kind of mixed up. And there's a reason that you don't find any state cases because state governments are set up with separation of powers. That's much more clear than a municipal government. And so I caution the court not to create kind of a revolution in state government, whereby any time a decision is written down in a regulation, it's suddenly legislatively immune. That would turn the law on its head and create absolute immunity, which the Supreme Court has rejected. And so, Your Honor, I think I'm out of time, but having explained the error below, I would ask that the court reverse. Thank you. All right. We thank both sides for their arguments in the case of Forrest Lee Jones versus Ralph Pierce is submitted and we're adjourned for this session. This court for this session stands adjourned.
judges: Ikuta, Nguyen, Eaton